UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA | SENTENCING <u>MEMORANDUM</u> |
| v. | Case No.  13-CR-339 (MAD) |
| JAMESE WILLIAMS, | |
| Defendant. | |

_____

## INTRODUCTION

Jamese Williams' "Offender Characteristics" are accurately set forth in paragraphs 57-65, with certain supplemental facts as set forth below.

**<u>Personal and Family Data</u>**

Jamese now understands that neither of her parents will seek to gain custody of her children provided she is incarcerated.  In fact, Jamese's relationship with her parents has worsened over time, is not a positive relationship at all, and Jamese has not and does not intend to tell her parents about her pending sentence.  When Jamese was last incarcerated in 2011 for approximately 4 months (PSI ¶47), Jamese's mother did have custody of her daughter during that time.  There were major problems between Jamese and her mother upon her release from jail, and the relationship has deteriorated even further since then.  Jamese believes her parents are in the process of divorcing each other.  As Jamese's brother lives with her parents, he is not in a position and appears unfit to take custody of her children.

Jamese has discussed her pending sentence with her sister, who has relocated to Pennsylvania.  Her sister has a stable family, but is herself in between jobs and financially unable to take custody of Jamese's two children.  Her sister has also expressed an unwillingness to do so.

1

The father of Jamese's 9 year old daughter is incarcerated until at least May 30, 2018 (PSI ¶58) and the father of her 1 year old son is unwilling to take custody (PSI ¶60).  Both of these men are seemingly unfit to do so anyway even if they expressed a willingness.

**Mental and Emotional Health**

Pursuant to Jamese experiencing suicidal ideation 9-10 months prior to the presentence interview (PSI ¶62), mental health treatment became a condition of pre-trial release.  Jamese has treated consistently with First Light Psychological Services, PLLC (Kristen Aliperti).  Your undersigned has been advised that a Court Order is necessary before Pretrial Services (Andrew Abbott) will authorize First Light to release a report to my attention. I am in the process of preparing said Order for the Court's consideration.

**Substances Abuse**

Jamese has not used alcohol or any non-prescription drugs of any kind since her negative urinalysis/drug screen submitted following the presentence interview on February 5, 2015. (PSI ¶24, 63).

**Employment History**

As of October of 2015, Jamese has been employed at Sunrise Credit Services in Farmingdale, New York.  This entity is a collections agency and Jamese is currently the Collections Coordinator.  She earned $12.50 per hour for approximately one month.  Jamese underwent training for this approximately one month period and has since completed the training, and is now earning $14.00 per hour.  Essentially, Jamese calls accounts of the company which are 90-180 days past due and seeks collection.

**General Circumstances**

Obviously, Jamese has endured a difficult life thus far.  Certain aspects of her difficulties stem from her own conduct and poor judgment.  The circumstances surrounding difficult aspects

of her life otherwise have occurred as a result of Jamese being victimized, internalizing her problems, and engaging in negative relationships.

However, it is respectfully submitted that, since Jamese's release on pre-trial supervision, she has exercised good and proper judgment; has given birth and properly cared for her son and has maintained her loving care for her 9 year old daughter; has maintained a stable residence; has done her best to provide for her children through applications for child care credits, social services, food stamps, heat program stipends, and subsidized housing. In addition, she has maintained essentially full time employment since October; has maintained her 9 year old daughter's enrollment in fourth grade at Academy Charter School in Hempstead, New York; and has obtained placement in Family and Friends Daycare in Freeport, New York for her 1 year son Maurice.

## PRELIMINARY STATEMENT

Defendant prepares to stand before the Court for sentencing, scheduled for December 21, 2015, after having entered guilty pleas as follows:

    Count 1:  Conspiracy to commit access device fraud (18 USC 1029(a)(2) and (b)(2));

    Count 2:  Access device fraud (18 USC 1029(a)(2)); and

    Count 3:  Aggravated identity theft (18 USC 1028A(a)(1)).

## PSIR/GUIDELINE COMPUTATIONS

The PSIR submitted on November 23, 2015 updated the prior PSIR which was previously submitted on July 24, 2015 (see Addendum to The Presentence Report, p. 29). As updated, defendant has no objections to the factual content or the guideline computations as set forth

therein. Defendant has and does, however, reserve her right to submit relevant arguments as set forth below.

## ARGUMENT

Pursuant to United States v. Booker/Fanfan, 125 S.Ct. 738 (January 12, 2005), the Sentencing Guidelines are no longer mandatory, but merely advisory. Recent case law imports renewed significance to the facts listed in 18 U.S.C. 3553(a). In United States v. Crosby, 397 F.3d 103 (2d Circuit 2004), the Second Circuit stated:

"Now, with mandatory duty to apply the guidelines excised, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance". Id.  As said section provides:

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." The stated purposes are:

- (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- (B)     to afford adequate deterrence to criminal conduct;

- (C)     to protect the public from further crimes of the defendant; and

- (D)     to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective  manner.

Importantly, the Second Circuit has also held that the guidelines **DO NOT** fully incorporate the factors contained in 18 U.S.C. 3553(a). United States v. Fernandez, 443 F.3d 19 (2d Circuit 2006).

The Sentencing Reform Act required the Sentencing Commission to enact sentencing guidelines that would meet the purpose of §3553(a)(2), provide fairness, reduce unwarranted

disparities, and maintain sufficient flexibility to permit individualized sentences.  28 U.S.C. §99(b)(1).

"With the entire Guidelines scheme rendered advisory by the Supreme Court's decision in Booker, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves." United States v. Jones, 460 F.3d 191, 194 (2d. Cir. 2006).

The Jones court further stated:

> "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness…We decline to impose a requirement for such specific articulation of the exact number of months of an imposed sentence.  Selection of an appropriate amount of punishment inevitably involves some degree of subjectivity that often cannot be precisely explained…Judge Larimer's reasons for the non-Guildelines sentence he imposed, even if not 'ordinarily' grounds for a pre-Booker guidelines departure and even though influenced in part by his subjective assessment of the Defendant, are adequate to support his conclusions that a post-Booker non-Guidelines sentence was appropriate for Eric Jones, and they suffice to satisfy the statutory requirement to state 'the reasons for [the court's] imposition of the particular sentence.'" Id. at 195.

## 18 U.S.C. §3553(a) FACTORS

**Nature and Circumstances of the Offense**

Obviously, Jamese Williams' conduct was criminal in nature. However, Jamese was not a leader or organizer, but rather was one of two co-conspirators who took direction and orders from co-conspirator Georgette Jackman and an unindicted co-conspirator. Jamese would attempt to buy gift cards with the fraudulent credit cards, albeit repeatedly, and then would turn over whatever gift cards were purchased to defendant Jackman, who in turn would sell them for

approximately half price. Jamese would be paid by Jackman based upon the volume of gift cards turned over.

While certainly not a defense to the criminal charges, and in no way designed to undermine defendant's acceptance of responsibility for her criminal conduct, Jamese had a difficult childhood and, then at all relevant times herein, found herself a single mother, unemployed and living alone with her six-year old daughter.

**History and Characteristics of Jamese Williams**

Ms. Williams has shown, and continues to show great remorse for her criminal conduct. Very soon after having an opportunity to review discovery materials provided by the government, Jamese decided to accept responsibility for her actions and plead guilty to the charges against her. As set forth in the PSIR, Jamese has at all times continued to accept responsibility for her actions.

Two character letters were submitted under separate cover. Further, your undersigned anticipates submitting further documents in this regard from her current employer as well as from the psychologist who has been helping Jamese as set up by Pretrial Services.

It is respectfully submitted that, since her guilty plea, Jamese has established herself as a person who is going to take care of her children and become a productive member of a community and society. Jamese has remained in full compliance with the requirements of pretrial release, over an extended period of time. She has completely abstained from any use of alcohol and drugs, with the exception of a prescription medication for anxiety. As aforementioned, Jamese has maintained the same residence for many years now. Her children are healthy—her 9 year-old daughter is enrolled in an age-appropriate educational setting and her 1 year-old is in day care. Day care for the younger child is necessary because Jamese has found steady employment and successfully completed the training required such that she has, in a short period

of time, obtained an increase in her hourly wage. These facts clearly establish that Jamese can become a productive, contributing and positive member of her community upon release. Jamese is still relatively young and is highly motivated to re-enter society with a positive approach and attitude. Ms. Williams has taken several admirable steps to change her life around and prepare for life's responsibilities.

**The Need for the Sentence Imposed**

Undoubtedly, Jamese's offenses were serious and she has absolutely acknowledged the serious nature of her criminal conduct. Ms. Williams is very remorseful and is committed to leading a life free from criminal conduct in the future. She truly looks forward to being able to take care of her young children and to being a good mother. Judging from her actions since indictment, said indictment and the existence of this criminal case pending for an extensive period of time seemingly have already served as an adequate deterrent to criminal conduct. There is no reason to think that Jamese will not be equally deterred from same in the future.

To the extent that the sentence imposed needs to consider educational or vocational training, I submit that Jamese is a perfect candidate for both. As aforementioned, Jamese has recently shown herself to be amenable to training and previously in life graduated from high school and attended college for approximately three semesters. Ms. Williams is physically healthy and willing to work.

Also as set forth above, the Court shall consider the various factors discussed so as to impose a sentence sufficient, but not greater than necessary to satisfy the purposes set forth in Section 3553(a)(2). Based upon Ms. Williams' acceptance of responsibility, her sincere remorse, and her positive actions since indictment, it is respectfully requested that the Court exercise its discretion and impose a non-guideline sentence.

## FAMILY TIES AND RESPONSIBILITIES

In furtherance of defendant's request for a non-guideline sentence and downward departure, it is respectfully submitted that defendant's extraordinary family ties, responsibilities and circumstances call for said departure. The facts as set forth in the PSIR and above herein clearly establish that since the indictment in this matter, Jamese has properly cared for, nurtured and provided financially for her children. Under USSG 5H1.6, family ties and responsibilities are not **ordinarily relevant** in determining whether a downward departure is warranted. However, Application Note 1B sets forth the circumstances pursuant to which a downward departure can be ordered by the Court.

Defendant has established that her children have nowhere to go upon her incarceration, except for foster care or the like. As such, defendant submits that each and every requirement and/or circumstance set forth in Application Note 1B(i-iv), in addition to the non-exhaustive list of circumstances in Note 1A, are met. Particularly, defendant's children will lose the only caretaking and financial support they have; such loss substantially exceeds the harm ordinarily incident to incarceration to a similarly situated defendant; said loss of caretaking and financial support cannot be replaced by any effective remedial or ameliorative programs; and a departure will address the loss of caretaking and financial support.

## ACCEPTANCE OF RESPONSIBILITY

Defendant Jamese Williams has completely accepted responsibility for her criminal conduct in this case. Jamese honestly and completely described her involvement in the instant criminal conspiracy. On the basis of the foregoing, a two-level reduction for acceptance of responsibility is appropriate (PSIR paragraph 40) and defendant also joins in the government's motion for an additional one-level reduction of offense level pursuant to USSG 3E1.1(b); see also PSIR paragraph 41.

## CRIMINAL HISTORY

USSG Section 4A1.3(b) allows the Court to depart downward from the otherwise applicable sentencing guideline range where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood defendant will commit other crimes." The guidelines are now considered advisory rather than mandatory, after Booker, supra, but courts are still required to consult their provisions and consider them in sentencing. Section 4A1.3 grants sentencing courts the discretion to depart where the criminal history calculation overstates the seriousness of a defendant's record (United States v. Rivers, 50 F.3d, 1126 (2d Circ. 1995)) (a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation...over-represents the seriousness of a defendant's record).

In such situations, the sentencing court may horizontally depart from one criminal history category to another. (United States v. Mishoe, U.S.A. pp. LEXIS 3352 (2d Cir. 2001). Some of the factors that a sentencing court may consider in assessing whether a horizontal departure is warranted include: (1) defendant's role in prior offenses; (2) the seriousness of the prior offense; (3) the sentences previously imposed; and (4) the amount of time previously served compared to the sentencing range called for by placement in the recommended criminal history category. Id. at 16-17.

In the instant mater, all prior offenses were committed by Jamese while in her twenties and none of the prior acts constituted a crime of violence as defined in 4B1.2.

Jamese Williams' criminal history category of IV is generally reserved for more hardened criminals and significant offenders. Such category substantially over-represents the seriousness of her actual criminal history as well as the likelihood that she will commit other crimes in the

future. The unlikelihood of recidivism is borne out by Ms. Williams' conduct since turning herself in on this indictment.

I respectfully submit that a horizontal departure in the Court's discretion is warranted pursuant to USSG 4A1.3(b)(1).

## VICTIMS

The amendment to the Victim's Table in USSG 2B1.1(b)(2) is accurately reflected in the amended PSIR and in the Government's Sentencing Memorandum.  However, this amendment adds a non-exhaustive list of factors for Courts to consider in determining whether the offense caused "substantial financial hardship", an element added to USSG 2B1.1(b)(2) as of November 1, 2015.  Defendant respectfully submits that, when the non-exhaustive list of factors is considered, no "substantial financial hardship" has been established and no enhancement should be imposed in this regard.

## SOPHISTICATED MEANS

The PSIR at paragraph 8(c) recommends a two-level increase alleging the offense involved sophisticated means pursuant to 2B1.1(b)(10)(C). The very language of said section, as amended recently, combined with the rationale set forth within Application Note 9(B) dictate a contrary conclusion. The underlying section states:   "If…the offense otherwise involved sophisticated means **and the defendant intentionally engaged in or caused the conduct constituting sophisticated means,** increase by 2 levels." The bold language cited immediately above was added by amendment to be effective as of November 1, 2015.  This amendment narrows the focus of the specific offense characteristics at 2B1.1(b)(10)(C) to cases in which the defendant intentionally engaged in or caused conduct constituting sophisticated means.  The commission concluded that basing the enhancement on the defendant's own intentional conduct

better reflects the defendant's culpability and will appropriately minimize application of this enhancement to less culpable offenders.

The facts establish that Jamese Williams was in no way responsible for obtaining or ever even using the actual access device. Jamese accurately and honestly described her role as a person who was given the fraudulent credit cards and then used them in the store and turned over the gift cards purchased. "Sophisticated means" is further defined within Application Note 9B as meaning "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."

On the basis of this clear, unambiguous, and recently amended language, as applied to Ms. Williams' conduct, the sophisticated means enhancement should not be imposed against this defendant.

## CONCLUSION

Based upon the foregoing, defendant Jamese Williams respectfully requests that the Court impose a fair and just sentence within its discretion.

Dated:  December 1, 2015

/s/_____
**BRIAN W. DEVANE, ESQ.**
**Bar Roll No.: 501138**
Attorney for Defendant
 Jamese Williams
125 Adams Street
Delmar, New York 12054
Telephone No.: (518) 475-9845

11